Naida I. de JESUS, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE
CORPORATION, Defendant.

Civ. No. 85–0705 (JAF).

United States District Court,
D. Puerto Rico.

Sept. 30, 1986.

Emmalind Garcia Garcia, Puerto Rico Legal Services, Inc., San Juan, Puerto Rico, for plaintiff.

Ramón E. Dapena, Brown, Newsom & Cordova, San Juan, Puerto Rico, for defendant.

## MEMORANDUM OPINION AND ORDER

FUSTE, District Judge.

This is a civil action brought pursuant to section 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. sec. 1132 (1974).

Naida I. de Jesus (Plaintiff) brought this action against General Motors Acceptance Corporation (GMAC), claiming that GMAC

unjustifiably denied her the benefits of a pension retirement plan. She further claims damages because of defendant's noncompliance with ERISA's disclosure and reporting requirements, 29 U.S.C. secs. 1021–1027 (1974). Lastly, she claims that upon GMAC's closing of the Arecibo, Puerto Rico, branch office, she was entitled to relocation as an alternative to dismissal. The three claims for relief are deemed to arise under the following facts: Plaintiff worked as an accounting clerk with GMAC's branch office located in Arecibo, Puerto Rico, from July 7, 1969 through March 8, 1982. On or about February 12, 1982, she was granted the benefits of sick leave. On February 28, 1982, GMAC closed the Arecibo branch office due to economical reasons. When plaintiff returned to her work, she was informed by GMAC that she was being laid off. This personnel action was notified on March 8, 1982.

Due to the fact that plaintiff had been employed for a term of ten years, plaintiff qualified for the employer program of compensation and benefits for employees, known as Improved Layoff Benefit Plan (Layoff Plan). This pension plan established that an ex-employee had a right to receive payments from the company up to a maximum of twenty-four months. To qualify for the layoff plan, an employee needed to have ten or more years of service. Since plaintiff had been laid off, plaintiff qualified for the benefits of the layoff plan. A benefit decision was entered by the Benefit Plan Administrator by letter dated March 21, 1983, which stated:

> [S]ince the employe was on a Disability Leave until March 7, 1983 (sic), and placed on layoff effective March 8, 1983 (sic), she will be eligible to receive the additional benefits available under the revised program.

Once plaintiff exhausted the benefits she was entitled to under the layoff plan, she claimed from GMAC the benefits of another benefit plan, properly-speaking, a pension plan that the company had in effect. This second plan, known as the New Income Protection Plan, established as its minimum qualifying requirements that a pensionee must (a) be a regular classified employee; (b) be a regular classified salaried employee at work on or after March 1, 1982; (c) have fifteen or more years of service at the time of dismissal or ten years if the dismissal is due to the closing of the office or branch; (d) exhaust the layoff benefit plan; (e) be available for work; and (f) report to the corporation on a timely basis, as required, certain information regarding financial status. *See*, 1982 *Income Protection Plan for Salaried Employees* sec. 2, app. a.

On March 22, 1984, plaintiff requested the benefits of the New Income Protection Plan. GMAC denied the benefits. The present judicial action ensued. Defendant now moves for partial summary judgment, by stating that plaintiff never qualified for the layoff or new income benefit plans, since she had been discharged from employment on February 1, 1982. Defendant states that in accord with the terms of the new income plan, plaintiff had to be "at work" on or after March 1, 1982. Plaintiff opposes the entry of summary judgment stating that essential facts are in controversy and that defendant is liable under the terms of the plan. We take plaintiff's opposition as a cross-motion for summary judgment. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## Entitlement to the Benefits of The New Income Plan

Congress enacted the Employee Retirement Income Security Act of 1974, 29 U.S.C. secs. 1001–1461 (1974), (hereinafter ERISA), to protect the interests of employees and their beneficiaries in private employment pension plans. *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 374, 100 S.Ct. 1723, 1732–33, 64 L.Ed.2d 354 (1980); *Debreceni v. The Outlet Co.*, 784 F.2d 13 (1st Cir.1986). ERISA grants to the participants and beneficiaries of pension plans and welfare benefit plans the right to sue in the federal courts for benefits due under said plans. *See* 29

U.S.C. sec. 1132(a)(1)(B) (1974). *Bostic v. Ohio River Co.,* 517 F.Supp. 627 (D.C.Va. 1981); *Miller v. Lay Trucking Co., Inc.,* 606 F.Supp. 1326, 1333 (N.D.Ind.1985) (federal jurisdiction to clarify plaintiff's rights under a pension plan), *but cf., NYSA–ILA Gaifund v. Poggi,* 617 F.Supp. 847 (D.C.N. Y.1985).

This case, as it stands, requires an interpretation of the plan itself and such judicial construction of the plan must follow the plaint language of the contract with no exercise of far-reaching interpretation directed to modify the substantive provisions of the plan. *See United Mine Workers of America Health and Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982); *Moore v. Reynolds Metal Co. Retirement Program,* 740 F.2d 454 (6th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985).

The standard upon which the court is obliged to examine the denial of pension benefits by a plan administrator is one of deference to the plan's language and plan administrator's decision. *See e.g., District 17, Dist. 29, Local Union 7113 v. Allied Corp.,* 765 F.2d 412, 416–17 (4th Cir.1985); *Short v. United Mine Workers of America 1950 Pension Trust,* 728 F.2d 528, 533 (D.C.Cir.1984). The court duty is to review the action denying benefits under the prism of the language of the plan and determine whether the denial is an arbitrary, capricious or discriminatory decision. *See e.g., White v. Distributors Ass'n Warehousemen Pension Trust,* 751 F.2d 1068 (9th Cir.1985); *Moore v. Reynolds Metal Co. Retirement Program,* 740 F.2d at 457; *Thothon v. Central States, Southeast and Southwest Pension Fund,* 717 F.2d 988 (6th Cir.1983); *Van Gunten v. Central States Southeast Pension Fund,* 672 F.2d 586 (6th Cir.1982); *see also,* H.Rep. No. 93–533, 93rd Cong.2d sess. (1974), *reprinted in* 1974 U.S. Code Cong. and Ad. News 4639, 4649. The First Circuit has followed this deferential standard of judicial intervention. *Palino v. Casey,* 664 F.2d 854 (1st Cir.1981) (court inquiry is limited to determining whether actions were arbitrary and capricious in light of trustee's

responsibility to beneficiaries); *Quinn v. Burlington Northern Inc. Pension Plan,* 664 F.2d 675 (8th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *Phillips v. Kennedy,* 542 F.2d 52 (8th Cir.1976); *Rueda v. Seafarers Inten. Union of North America,* 576 F.2d 939 (1st Cir.1978).

Some courts have established guidelines to follow in an analysis as to the correctness of a plan administrator's decision as to arbitrariness, to wit: (a) uniformity of the construction of the plan; (b) interpretation of the plan contrary to its terms; and, (c) fair interpretation and reasonableness of the interpretation. *See Jung v. FMC Corp.,* 755 F.2d 708 (9th Cir.1985) (decisions of welfare plan trustees may be reversed only when they are arbitrary, capricious, made in bad faith, not supported by substantial evidence or erroneous on a question of law); *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 n. 12 (5th Cir.1982); *Carr v. Trustees of Hotel & Restaurant Employees,* 585 F.Supp. 949, 959 (E.D.Pa.1984). The rule is clear that under an ERISA claim, the substantive law to apply is federal law. *See Peckham v. Board of Trustees of Intern. Broth. of Painters and Allied Trades Union,* 653 F.2d 424 (10th Cir.1981).

In light of the above rules of construction, the pension plan dispositions here in controversy are to be seen in their literal meaning, in the context of all its provisions. *Monsanto v. Ford,* 534 F.Supp. 51 (D.C.Md. 1981). The trustee or plan administrator's interpretation is to be upheld if it is reasonable. *Hoefel v. Atlas Tack Corp.,* 581 F.2d 1 (1st Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 *Donaldson v. Hamburg Sav. Bk.,* 568 F.Supp. 897 (E.D. N.Y.1983); *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund,* 701 F.2d 1301 (9th Cir.1983); *Jestings v. New England Tel. and Tel. Co.,* 757 F.2d 8 (1st Cir.1985) (where both trustee of pension fund and rejected applicant offer rational though conflicting interpretations of plan provisions, trustee's interpretation must be allowed to control).

As we see it, the dispute between the parties is whether plaintiff was "at work" on or before March 1, 1982, when she was enjoying sick leave benefits, the company having dismissed her officially on March 8, 1982 as a result of the closing of the Arecibo branch office.

■ We must look at the pension plan language on the subject. Defendant's 1982 Income Protection Plan for Salaried Employees, at its section 16 NN, defines the term "work" or "at work" or "worked" as "receiving pay for regular hours scheduled by the corporation and worked as a regular classified salaried employe." In the summary of the plan description sent by GMAC's Personnel Administrator to its employees, the new income plan is described as:

> The New Income Protection Plan will provide benefits for an employee *at work* on or after March 1, 1982, and subsequently laid off who has 15 or more years length of service, or one who has 10 years length of service in the case of a branch closing. (Emphasis added)

We find that the Plan Administrator denied the new income plan benefits based solely on the fact that plaintiff was on sick leave before March 1, 1982, even though he had previously determined that she qualified for the layoff benefits plan, which had the same time frame requirement.[1] Such action by a trustee or plan administrator is discriminatory and arbitrary. While plaintiff was away from work on sick leave she continued to be employed by defendant. Plaintiff was a payroll employee until she was effectively and affirmatively laid off by the company. *See* Deposition, Antonio Flores, General Manager of defendant in Puerto Rico, p. 30, docket document No. 28. It is clear that plaintiff qualified and was entitled to benefits under the literal terms of the plan. This renders moot plaintiff's claim that GMAC failed to comply with ERISA's disclosure and reporting requirements.[2]

### Local Law Claim

■ Plaintiff also presents a claim under Puerto Rico's Law 80 of May 15, 1976, 29 L.P.R.A. secs. 183–185i, for unjust dismissal from employment. However, plaintiff must face the reality that it is clear that state law claims are preempted by ERISA. *Shaw v. Delta Airlines*, 463 U.S. 85 (1983), 103 S.Ct. 2890, 2899–2901, 77 L.Ed.2d 490. As a general norm, under ERISA, a beneficiary can only claim benefits due. *See Quesnell v. Milwaukee Area Truck Drivers*, 624 F.Supp. 323, 324 (E.D.Wis.1985) (extracontractual damages not allowable); *Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143, 1163 (D.D.C.1986) (a claim against a plan is limited to recovery of benefits due). The claim under local law must fall.

Summary judgment will be entered in favor of plaintiff granting her the benefits of the new income pension plan. The cause of action based on Puerto Rico law No. 80, 29 L.P.R.A. secs. 183–185 (1976), is DISMISSED for lack of jurisdiction.

IT IS SO ORDERED.

---

1. The administrator of the plan stated then:
   [S]ince the employe was on Disability Leave until March 7, 1983 (sic), and placed on layoff effective March 8, 1983 (sic), she will be eligible to receive the additional benefits available under the revised program....
   Unfortunately the employes who were placed on layoff at the end of February 1982 will not qualify for these additional benefits.

2. In any event, the complaint fails to properly plead facts to support a claim that GMAC failed to comply with ERISA's disclosure and reporting requirements. We raise the insufficiency of the pleading *sua sponte* and dismiss the same. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).